UNITED STATES, Appellee

v.

Kevin L. McILWAIN, Specialist
U.S. Army, Appellant

No. 07-0544

Crim. App. No. 20040095

United States Court of Appeals for the Armed Forces

Argued February 5, 2008

Decided May 21, 2008

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, J., joined.  RYAN, J., filed a dissenting opinion, in which BAKER, J., joined.  BAKER, J., also filed a separate dissenting opinion.

<u>Counsel</u>

For Appellant:  <u>Captain Shay Stanford</u> (argued); <u>Colonel Christopher J. O'Brien</u>, <u>Lieutenant Colonel Steven C. Henricks</u>, and <u>Major Teresa L. Raymond</u> (on brief); <u>Major Sean Mangan</u> and <u>Captain Edward G. Bahdi</u>.

For Appellee:  <u>Captain Nicole L. Fish</u> (argued); <u>Colonel John W. Miller II</u>, <u>Major Elizabeth G. Marotta</u>, and <u>Captain Larry W. Downend</u> (on brief).

Military Judge:  Robin L. Hall

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**</u>

Judge STUCKY delivered the opinion of the Court.

We granted Appellant's petition for review to determine if the military judge abused her discretion by denying the defense motion to recuse herself after declaring that her participation in companion cases "would suggest to an impartial person looking in that [she] can't be impartial in this case" and refusing to sit as trier of fact. We hold that she abused her discretion, and reverse.

I.

Appellant was convicted of rape, forcible sodomy, and indecent acts. Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934 (2000). Court members sentenced him to a bad-conduct discharge, confinement for fifty-four months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

Before asking for Appellant's choice of forum, the military judge disclosed that she had presided over the companion cases of Specialist (SPC) Blow and Private (PVT) Williams. PVT Williams had pled guilty in a judge-alone trial, and SPC Blow had entered mixed pleas.

The military judge told Appellant that she would recuse herself if asked to sit as a judge-alone court-martial, but would not do so if Appellant elected members. She stated that, despite sitting on the companion cases, she had neither decided

2

any issue nor developed any opinions relating to Appellant's case. However, during a brief voir dire, the military judge explained that PVT Williams's providence inquiry had implicated Appellant because PVT Williams had pled to indecent assault "as a principal" for Appellant's act of pushing NG's head down on PVT Williams's penis. She admitted hearing more about Appellant during SFC Blow's trial earlier in the week. Specifically, the military judge told trial defense counsel the following:

> But I did hear a bunch about Specialist Williams [sic][1] at the trial Monday, Tuesday, and Wednesday of this week, so if your client desires to go with a judge alone, then I would not sit; I would recuse myself. If your client decides to go with a panel of either all officers or officers and enlisted members, then I'm comfortable that I will be able to objectively instruct the members, rule on objections, and that sort of thing, because my role is different.

After the military judge disclosed that she would be comfortable presiding over a members trial, Appellant elected to be tried before officer and enlisted members. Nevertheless, he asked the military judge to recuse herself. She denied the recusal request and again told Appellant that if he chose a judge-alone forum she would recuse herself because she had made decisions favorable to Appellant in terms of assessing

---

[1] Both parties agree the military judge was talking about Appellant.

witness credibility.  Those decisions "would suggest to an impartial person looking in that I can't be impartial in this case."

## II.

"An accused has a constitutional right to an impartial judge."  United States v. Wright, 52 M.J. 136, 140 (C.A.A.F. 1999) (citing Ward v. Village of Monroeville, 409 U.S. 57 (1972)); Tumey v. Ohio, 273 U.S. 510 (1927)).  Except where the parties have waived disqualification of the military judge after full disclosure of the basis for disqualification, a military judge must recuse herself "in any proceeding in which that military judge's impartiality might reasonably be questioned."  Rule for Courts-Martial (R.C.M.) 902(a).

Whether the military judge should disqualify herself is viewed objectively, and is "assessed not in the mind of the military judge [her]self, but rather in the mind of a reasonable man . . . who has knowledge of all the facts."  Wright, 52 M.J. at 141 (citation and quotation marks omitted).  Military judges should "broadly construe" possible reasons for disqualification, but also should not recuse themselves "unnecessarily."  Id.; R.C.M. 902(d)(1) Discussion.  On appellate review, this Court will reverse a military judge's decision on the issue of recusal only for an abuse of discretion.  United States v. Butcher, 56 M.J. 87, 90 (C.A.A.F. 2001).

It is well-settled in military law that the military judge is more than a mere referee.  United States v. Wolford, 62 M.J. 418, 422 (C.A.A.F. 2006); United States v. Cooper, 51 M.J. 247, 253 (C.A.A.F. 1999) (Gierke, J., concurring in part and in the result); United States v. Graves, 1 M.J. 50, 53 (C.M.A. 1975). She is "the presiding authority in a court-martial and is responsible for ensuring that a fair trial is conducted." United States v. Quintanilla, 56 M.J. 37, 41 (C.A.A.F. 2001) (citing Article 26, UCMJ, 10 U.S.C. § 826 (2000); R.C.M. 801(a) and Discussion, Manual for Courts-Martial, United States (2000 ed.)).  As this Court explained in Quintanilla:

> The judge has broad discretion in carrying out this responsibility, including the authority to call and question witnesses, hold sessions outside the presence of members, govern the order and manner of testimony and argument, control voir dire, rule on the admissibility of evidence and interlocutory questions, exercise contempt power to control the proceedings, and, in a bench trial, adjudge findings and sentence.

Id.  In these roles:

> The impartiality of a presiding judge is crucial, for "'[t]he influence of the trial judge on the jury is necessarily and properly of great weight,' . . . and jurors are ever watchful of the words that fall from him.  Particularly in a criminal trial, the judge's last word is apt to be the decisive word."

Id. at 43 (quoting United States v. Shackelford, 2 M.J. 17, 19 (C.M.A. 1976)).

We commend the military judge for her candor in fully disclosing her participation in the companion cases and her sensitivity to the public's perceptions of the military justice system. That she sat on companion cases does not, without more, mandate recusal. United States v. Oakley, 33 M.J. 27, 34 (C.M.A. 1991) (holding no error military judge's refusal to recuse himself after sitting on two companion cases and making decisions in those cases regarding suppression motions). However, once the military judge performed the analysis required by R.C.M. 902(a) and announced that her participation "would suggest to an impartial person looking in that I can't be impartial in this case," such a person would question her impartiality. Every time she ruled on evidence, asked questions, responded to member questions, or determined instructions, the military judge exercised her discretion, a discretion that she admitted an impartial person would conclude had not been exercised in an impartial manner.[2] Therefore, she was disqualified and abused her discretion by continuing to sit on the case. As we held in United States v. Sherrod, 26 M.J. 30, 33 (C.M.A. 1988), "[i]f a judge is disqualified to sit as judge alone, [s]he is also disqualified to sit with members."[3]

---

[2] This is not a case like Butcher, where the ground for disqualification arose when the case was almost finished. 56 M.J. at 92.

[3] Having explicitly made the R.C.M. 902(a) determination in favor of disqualification, the military judge also removed herself

                              III.

     This Court has recognized that not every judicial

disqualification error requires reversal and has adopted the

standards the Supreme Court announced in Liljeberg v. Health

Services Acquisition Corp., 486 U.S. 847, 864 (1988), for

determining whether a judge's disqualification under 28 U.S.C. §

455(a) (2000), warrants a remedy.  Butcher, 56 M.J. at 92.  The

three-part Liljeberg test looks at:

     (1)  the risk of injustice to the parties,
     (2)  the risk that the denial of relief will produce
          injustice in other cases, and
     (3)  the risk of undermining public confidence in the
          judicial process.

486 U.S. at 864; Butcher, 56 M.J. at 92-93; Quintanilla, 56 M.J.

at 80-81.  Applying these criteria, we find reversal is

warranted in this case.

     The risk of injustice to the parties is high when a

military judge who has stated her bias nonetheless presides over

a court-martial, even when she does not act as the trier of

fact.  As noted above, a military judge is charged with making a

number of decisions, any one of which could affect the members'

_____

from the middle category of cases in Sherrod, where we stated we
would not ordinarily substitute our judgment for that of the
military judge.  26 M.J. at 33.  Furthermore, although the
military judge's disclosure follows the procedure outlined in
United States v. Campos, 42 M.J. 253, 262 (C.A.A.F. 1995), see
United States v. McIlwain, __ M.J. __ (2-3, 4) (C.A.A.F. 2008)
(Ryan, J., joined by Baker, J., dissenting), our review as to
whether R.C.M. 902(a) requires disqualification does not end

                                7

decision as to guilt or innocence, or with regard to the sentence. Quintanilla, 56 M.J. at 41. Although the risk of injustice in other cases if relief is denied is minimal, since the military judge determined not to sit as trier of fact only in Appellant's trial, it is the third Liljeberg factor -- the risk of undermining the public's confidence in the judicial system -- that is most affected by the military judge's refusal to recuse herself in this case. Every time the military judge made a decision, she exercised her discretion -- a discretion which she herself had found was biased. This could not but produce a corrosive impact on public confidence in the military justice system. "'The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.'" Liljeberg, 486 U.S. at 869-70 (quoting Public Utilities Commission of D.C. v. Pollak, 343 U.S. 451, 466-67 (1952) (Frankfurter, J., in chambers).

IV.

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

---

with the fact of the military judge's disclosure. The substance of the disclosure is also critical to our inquiry.

RYAN, Judge, with whom BAKER, Judge, joins (dissenting):

I do not understand how a military judge's inartful comment regarding her subjective belief concerning the thoughts others might have about her presiding over a bench trial when she had been the military judge in companion cases warrants reversal in this case.  First, it has never been the law that hearing a companion case alone is a basis for disqualification under Rule for Courts-Martial (R.C.M.) 902(a).  See United States v. Rivers, 49 M.J. 434, 444 (C.A.A.F. 1998) (rejecting a disqualification claim where the military judge had disclosed presiding over a companion case before the accused opted for a trial by judge alone).  Yet, as Judge Baker's separate dissent points out, the majority effectively creates a per se rule against military judges sitting on companion cases.  United States v. McIlwain, __ M.J. at __ (1-2) (C.A.A.F. 2008) (Baker, J., dissenting).  At the same time, the majority acknowledges that this is not the law.  United States v. McIlwain, __ M.J. __ (6) (C.A.A.F. 2008).  Second, and relatedly, the test for disqualification under R.C.M. 902(a) is objective, not subjective.  United States v. Norfleet, 53 M.J. 262, 270 (C.A.A.F. 2000).  Objectively, there was no basis for disqualification.  Third, under well-settled case law from this Court, because the military judge was transparent and disclosed that she had heard two companion cases, it was trial defense

counsel's responsibility to "present evidence regarding a possible ground for disqualification." R.C.M. 902(d)(2); see also United States v. Kincheloe, 14 M.J. 40, 50 (C.M.A. 1982) (stating that an allegation must be supported by facts or probative evidence warranting a reasonable inference of partiality). He did not. In light of this, the military judge did not abuse her discretion in denying Appellant's motion for recusal especially where, as here, the record discloses nothing that shows Appellant was prejudiced by her failure to recuse herself.

Even assuming the military judge did err, application of the factors outlined in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864 (1988), to the actual facts of this case yields no basis for reversal. The majority's contrary result is incongruous; there is not a single fact in the record disclosing any prejudice to Appellant, and the only hypothetical bias suggested by the military judge was in Appellant's favor.

### A. No R.C.M. 902(a) Disqualification

Rule for Court's Martial 902(a) states that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." R.C.M. 902(a) (emphasis added). The test is objective, not subjective. Kincheloe, 14 M.J. at 50. A military judge's impartiality is presumed. See United States v.

2

Sherrod, 26 M.J. 30, 33 (C.M.A. 1988).  And the fact that a

military judge discloses a possible basis for recusal does not

require disqualification under the rule:

> We have emphasized that "where the military judge
> makes full disclosure on the record and affirmatively
> disclaims any impact on him, where the defense has
> full opportunity to voir dire the military judge and
> to present evidence on the question, and where such
> record demonstrates that appellant obviously was not
> prejudiced by the military judge's not recusing
> himself, the concerns of R.C.M. 902(a) are fully met."

Norfleet, 53 M.J. at 270 (quoting United States v. Campos, 42

M.J. 253, 262 (C.A.A.F. 1995)).

Disqualification based solely upon appearances is

exceptional, and involvement in a companion case does not

warrant such an exception.  Sherrod, 26 M.J. at 33; Rivers, 49

M.J. at 444.  It is not derived from application of a simple

formulaic.  See Sherrod, 26 M.J. at 33 (analyzing for

prejudice); cf. United States v. Burton, 52 M.J. 223, 226-27

(C.A.A.F. 2000) (reviewing military judge's questions on

sentencing for personal bias); Rivers, 49 M.J. at 444 (reviewing

military judge's judicial involvement in a companion case and

concluding that involvement in a companion case alone is not

sufficient to require disqualification under R.C.M. 902(a)).[1]

---

[1] Parenteau v. Jacobson, 586 N.E.2d 15 (Mass. App. Ct. 1993), and
Walberg v. Israel, 766 F.2d 1071 (7th Cir. 1985), cited in the
granted issue are inapposite.  In Parenteau, the judge abused
his discretion by subordinating concerns about bias to judicial

In this case, the military judge stated on the record that she had been involved in two companion cases, questioned whether an impartial person might suspect her impartiality if she served as the finder of fact in Appellant's case, and advised Appellant that she would recuse herself and get another military judge if he chose a bench trial, which he did not do. The military judge complied with the procedure outlined in Norfleet and Campos. Trial defense counsel had every opportunity to further voir dire the military judge and present evidence, but chose not to, and the record demonstrates no prejudice to Appellant from the military judge's denial of his recusal motion.

The majority nonetheless holds that the military judge's statement is the basis for finding that she abused her discretion in this case because she "was biased." Of course, actual bias is a ground for recusal under R.C.M. 902(b). But no one suggests that this is an R.C.M. 902(b) case. The majority

---

economy. 586 N.E.2d at 18. Further, the Parenteau record was replete with facts showing a reason to question the judge's impartiality, not least of which was the judge's statement that he had previously assessed the appellant's credibility and determined "he was one of the biggest liars that I'd seen in a long time." Id. at 17. Walberg was an ineffective assistance of counsel case, not a disqualification case in which, similarly, the record showed the judge was so outwardly hostile towards the appellant that during the suppression hearing he answered the appellant's questions before the appellant to demonstrate the predictability of his answers and implied in open court that the appellant was unworthy of the attorney's efforts on his behalf. 766 F.2d at 1073, 1077.

states that "[e]very time she ruled on evidence, asked questions, responded to member questions, or determined instructions, the military judge exercised her discretion, a discretion that she admitted an impartial person would conclude had not been exercised in an impartial manner." McIlwain, __ M.J. at __ (6). But it fails to identify a single fact to support the conclusion that the military judge's decisions throughout the trial were tainted, less than impartial, or that Appellant was prejudiced in any way.

Instead, the majority appears to rest its decision solely on the military judge's gratuitous statement about what people might have thought about her presiding in a judge-alone trial had the accused elected one. But there is simply no legal authority for the proposition that this conjecture alone supports the conclusion that R.C.M. 902(a) disqualified her from the members trial over which she in fact presided. And the problem, as Judge Baker explains in his separate dissent, with which I agree, is that applying a contrary rule may discourage judicial candor. McIlwain, __ M.J. at __ (2-3) (Baker, J., dissenting).

Since nothing in the record would lead a reasonable person to question the military judge's impartiality, and since having heard a companion case is, as a matter of law, alone not enough

to present a R.C.M. 902(a) issue, I would hold that the military judge did not abuse her discretion.

## B. If Error, No Prejudice

Even if a military judge errs in failing to recuse herself, the reversal of a military judge's decision is warranted only when the record supports the conclusion that there is: (1) a risk of injustice to the parties in the case; (2) the risk that denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. United States v. Butcher, 56 M.J. 87, 92 (C.A.A.F. 2001) (citing Liljeberg, 486 U.S. at 864). In this case, even assuming the military judge erred, Appellant has not shown, and the majority fails to explain, how Appellant, future litigants, or public confidence were subjected to an increased risk of harm by the decision of the military judge in this case. See Liljeberg, 486 U.S. at 864. Reversal is not warranted.

There is no showing of injustice to Appellant. Traditionally, this Court has undertaken a record-intensive analysis in weighing the first Liljeberg factor in order to find an injustice. See, e.g., Butcher, 56 M.J. at 92-93 (examining the record to determine the risk of injustice based on the timing of specific rulings during the trial); Burton, 52 M.J. at 226 (examining the record in determining whether military judge's questions reflected a personal bias against the

appellant).  Instead, in this case the majority summarily states that "[t]he risk of injustice to the parties is high when a military judge who has stated her bias nonetheless presides over a court-martial, even when she does not act as the trier of fact."  McIlwain, __ M.J. at __ (8).  This truism is unrelated to the facts of this case.

First, the military judge did not state that she had a bias.  She said only that in a bench trial, an impartial person might assume she did because she presided over two companion cases.  Therefore, she advised Appellant during his forum election that, if Appellant chose a bench trial, she would recuse herself and get another military judge in order to avoid the perception that any ruling she made on witness credibility in the earlier companion cases might be perceived as favorable to her determination of Appellant's guilt or innocence.  The distance between the military judge's statement and the reasoning of the majority on this point is marked.

Second, unlike in Sherrod, 26 M.J. at 31, Appellant does not argue that his forum election was tainted by the military judge's statements or that the outcome of his case would have been different had the military judge recused herself.  Finally, neither Appellant nor the majority point to a single ruling, comment, or fact at trial indicating the military judge demonstrated bias or was prejudicial to Appellant.  The absence

of any fact on the record showing that there was an increased risk of injustice to Appellant makes it difficult to see how the first Liljeberg factor weighs in favor of reversal.

I agree with the majority that the second Liljeberg factor was not implicated in this case, but part ways on the analysis of the third. The majority holds that the military judge's decision undermined public confidence because "[e]very time the military judge made a decision, she exercised her discretion -- a discretion which she herself had found was biased." McIlwain, __ M.J. at __ (8). As noted above, this is not what the military judge said. Moreover, it conflates R.C.M. 902(a) and (b), and, even assuming error, ignores the ordinary rule that something beyond error is required for reversal in any disqualification case. Liljeberg, 486 U.S. at 864; Butcher, 56 M.J. at 92.

Based on this record, where the only evidence in support of recusal under R.C.M. 902(a) was the fact that the military judge had heard two companion cases, there was no risk that her decision "undermin[ed] the public's confidence in the judicial process." Liljeberg, 486 U.S. at 864. Instead, the record reflects full transparency on the part of the military judge, no partiality towards either party in the conduct of the trial, that the findings and sentence were entered by a panel of members, and that the only bias expressed by the military judge

was possibly in favor of Appellant.

    I respectfully dissent.

BAKER, Judge (dissenting):

The majority misreads the military judge's statement.  In doing so, it effectively creates a per se rule against military judges sitting on companion cases.  For, if this military judge were disqualified from sitting on Appellant's case, then a military judge should and would be disqualified in all companion cases.  Therefore, I join Judge Ryan in her dissent, but I also wish to make several additional points.

Here is what the military judge in this case said on the record:

> As I said, if you wanted to go with a judge, then I would not be comfortable sitting on your case because I feel that I've made decisions, frankly, probably favorable to you in terms of credibility of witnesses but, nevertheless, decisions that would suggest to an impartial person looking in that I can't be impartial in this case.

Note that the military judge did not conclude she could not be impartial.  Rather, while thinking out loud, she stated that an objective observer might reach that conclusion if she sat as judge alone.

Nonetheless, the majority focuses exclusively on the last clause of this statement, without addressing the essential conditional predicate, namely, "if you wanted to go with a judge [alone]."  In doing so, the majority effectively adopts a rule providing that where a military judge has sat on any case and "made decisions," that military judge cannot sit on a companion

case, regardless of whether the military judge is sitting as a judge alone or with members. That conclusion is ineluctable, because there is no other way to distinguish this case from every other companion-case circumstance involving a military judge who has made decisions. The majority asserts otherwise, but there is no other basis on which recusal would have been required in this case.

That is not what United States v. Sherrod, 26 M.J. 30 (C.M.A. 1988), stands for, and as Judge Ryan's dissent points out, that is not the law. Military judges are permitted to sit on companion cases provided they can do so impartially. In summary, the majority, in my view, has over-read the record, and in doing so has backed into a de facto per se rule of recusal, rather than a contextual rule of recusal.

I am also concerned about the effect of this Court's decision on practice in military courts. I am not in a position to address the possible impact on judicial resources if military judges in fact recuse themselves from every companion case in which they have "made decisions." More importantly, the majority commends the military judge for her candor in fully disclosing her participation in the companion cases by taking her remarks out of context and reversing. I fear that in the future military judges might well adopt the safer course of silence. Rather than encouraging candor and the sort of

2

thinking out loud that permits parties to make informed decisions subject to informed appellate review, the legal policy message to military judges would appear to be keep your mouth closed until you are prepared to speak in the declaratory sentences of factual findings and conclusions of law.

That is surely not good for military practice.  And it is surely not the intent of the majority, which I know is focused along with the dissents on the integrity of the military justice system.